**United States District Court**
**District of Massachusetts**

| | |
|---|---|
| _____ ) | |
| CONRAD S. TRAUT and ) | |
| CELINA M. TRAUT, ) | |
| ) | |
| Plaintiffs ) | |
| ) | Civil Action No. |
| v. ) | 15-13401-NMG |
| ) | |
| QUANTUM SERVICING CORPORATION, ) | |
| RESIDENTIAL CREDIT SOLUTIONS, ) | |
| INC., RUSHMORE LOAN MANAGEMENT ) | |
| SERVICES LLC, ELIZON MASTER ) | |
| PARTICIPATION TRUST I and ) | |
| US BANK TRUST N.A., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## MEMORANDUM & ORDER

**Gorton, J.**

Conrad and Celina Traut (collectively, "plaintiffs") bring this action against Quantum Servicing Corporation ("Quantum"), Residential Credit Solutions, Inc. ("RCS"), Rushmore Loan Management Services LLC ("Rushmore"), Elizon Master Participation Trust I ("Elizon") and US Bank Trust N.A. ("US Bank")(collectively, "defendants") seeking injunctive relief and civil damages for defendants' alleged conduct with respect to plaintiffs' residential mortgage. Pending before the Court are RCS's motion for judgment on the pleadings and Rushmore's motion for partial dismissal. For the reasons that follow, Rushmore's

- 1 -

motion will be denied and RCS's motion will be allowed, in part, and denied, in part.

## I.  **Background**

Plaintiffs own a residence in Sharon, Massachusetts.  RCS is a Delaware corporation with a principal place of business in Texas.  Rushmore is a limited liability company registered as a foreign entity in Massachusetts whose members apparently reside in California.  Both defendants provide loan servicing services on behalf of mortgage creditors.

In 2007, plaintiffs executed a note and 30-year mortgage with American Home Mortgage ("AHM") to secure a loan in the amount of $415,200.  The terms of the mortgage included a low introductory interest rate, an initial monthly payment of less than full interest and a subsequent rate increase set only to repay accrued interest.

In July, 2010, plaintiffs made a late payment due to financial hardship.  Quantum, as the loan servicer, marked the loan delinquent and threatened foreclosure.  Plaintiffs allege that they attempted to make subsequent payments but such efforts were rejected by Quantum.  They also allege that they applied for multiple loan modifications throughout 2011.  In December, 2011 those efforts resulted in receipt of a forbearance agreement and letter indicating that plaintiffs' loan would be modified "upon completion of the 6 month trial plan agreement."

Despite confusion over the forbearance agreement and the modification approval, plaintiffs executed the document to prevent an imminent foreclosure sale.  Quantum nevertheless auctioned plaintiffs' residence but rescinded the sale after plaintiffs' counsel threatened legal action.

In August, 2012, RCS succeeded Quantum as the loan servicer.  Plaintiffs allege that RCS did not credit some of their previous payments to Quantum on the loan.  As a result, plaintiffs stopped making payments in September, 2012.  They attempted to apply for a loan modification for nearly two years and resubmitted multiple applications and documents at RCS's request.  Plaintiffs did not, however, receive a modification.

In December, 2014, Elizon became the loan creditor and Rushmore assumed loan servicing.  Rushmore notified plaintiffs in February, 2015 that the loan was in foreclosure.  Throughout the spring of 2015, Rushmore was in contact with plaintiffs.  In May, 2015, plaintiffs' counsel sent Rushmore a cease and desist letter advising Rushmore that all further communications should be made through plaintiffs' counsel.  They also sent a demand letter to Quantum, RCS and Rushmore in May, 2015 pursuant to MASS. GEN. LAWS ch. 93A.  Plaintiffs continued to receive communications from Rushmore through October, 2015.

In September, 2015, plaintiffs initiated this action by filing a complaint against defendants alleging 1) breach of

contract by Quantum, RCS, Rushmore and Elizon, 2) promissory estoppel against Quantum, RCS, Rushmore and Elizon, 3) negligent misrepresentation by Quantum, 4) violations of the Fair Debt Collection Practices Act ("FDCPA") by Quantum, RCS and Rushmore and 5) violations of MASS. GEN. LAWS ch. 93A ("Chapter 93A") by Quantum, RCS, Rushmore and Elizon.

## II.   Rushmore's Motion to Dismiss and RCS's Motion for Judgment on the Pleadings

Rushmore filed a motion to dismiss, in part, pursuant to Fed. R. Civ. P. 12(b)(6) with respect to the breach of contract claim in Count I and the promissory estoppel claim in Count II. Rushmore filed that motion with its answer to the complaint so the Court will treat it as a motion for judgment on the pleadings. See Lu v. Menino, 98 F. Supp. 3d 85, 93 (D. Mass. 2015)(reviewing a 12(b)(6) motion filed after the submission of an answer under the 12(c) standard).

Similarly, RCS filed a motion for judgment on the pleadings pursuant to Rule 12(c) with respect to the breach of contract claim in Count I, the promissory estoppel claim in Count II, the Fair Debt Collection Practices Act ("FDCPA") claim in Count IV and the Chapter 93A claim in Count V.

### A.   Legal Standards

A motion for judgment on the pleadings under Rule 12(c) "is treated much like a Rule 12(b)(6) motion to dismiss." Perez-

- 4 -

Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008).
While it differs from a Rule 12(b)(6) motion insofar as it is
filed after the close of the pleadings and considers the factual
allegations in both the complaint and answer, a Rule 12(c)
motion for judgment on the pleadings is governed by the same
standard. See Perez-Acevedo, 520 F.3d at 19; Santiago v. Bloise,
741 F. Supp. 2d 357, 360 (D. Mass. 2010).

To survive a motion to dismiss, the subject pleadings must
contain sufficient factual matter to state a claim for relief
that is actionable as a matter of law and is "plausible on its
face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  For a
claim to be facially plausible, the pleadings must show "more
than a sheer possibility that a defendant has acted unlawfully."
Id.  Plaintiffs cannot merely restate defendants' potential
liability. Id.

In considering the merits of these motions, the Court must
accept all factual allegations in the complaint as true and draw
all reasonable inferences in plaintiffs' favor. See Lu, 98 F.
Supp. 3d at 93.  Moreover, the Court should "treat any
allegations in the answer that contradict the complaint as
false." Id. at 94.  The Court may also consider certain
documents when 1) the documents' authenticity is not disputed by
the parties, 2) the documents are "central to the plaintiffs'

claim" or 3) the documents are "sufficiently referred to in the complaint." <u>Curran</u> v. <u>Cousins</u>, 509 F.3d 36, 44 (1st Cir. 2007).

## B.   Application

### 1.   Breach of Contract Claim (Count I) Against Rushmore & RCS

In Count I, plaintiffs allege that RCS and Rushmore breached the terms of a 2011 trial plan or forbearance agreement entered between plaintiffs and Quantum ("the Agreement").  In accordance with Massachusetts law, plaintiffs must make the following four showings of fact to allege a breach of contract: 1) a valid contract existed between the parties, 2) plaintiffs were ready, willing, and able to perform under the contract, 3) defendants breached the contract and 4) plaintiffs sustained damages as a result of defendants' breach. <u>See</u> <u>Bose Corp.</u> v. <u>Ejaz</u>, 732 F.3d 17, 21 (1st Cir. 2013).

The only dispute between the parties is whether plaintiffs alleged sufficient facts to demonstrate that a valid contract existed.  Specifically, the parties agree that the Agreement is a contract between plaintiffs and Quantum but disagree as to whether it operates as a valid contract between plaintiffs on the one hand, and RCS and Rushmore on the other.

Plaintiffs argue that RCS and Rushmore are bound by the terms of the Agreement due to their assignment of loan servicing.  They base that conclusion on the fact that the

Agreement did not prohibit assignment and point to precedent from the First Circuit Court of Appeals finding mortgage servicers liable for breach of similar agreements.  See Conte v. Bank of America, N.A., 52 F. Supp. 3d 265, 268-69 (1st Cir. 2014)(holding a successor by merger to a loan servicer liable for various claims, including breach of contract); Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 231-36 (holding a loan servicer liable for breach of a trial plan agreement).

Plaintiffs have presented sufficient factual assertions to allege that a binding contract existed between plaintiffs and defendants RCS and Rushmore.  Trial period plans and trial plan agreements ("TPAs") have all the trappings of binding contracts. See Bosque v. Wells Fargo Bank, N.A., 762 F. Supp. 2d 342, 348 (D. Mass 2011).  Other sessions in this Court have accepted the theory that mortgage servicers and their successors are liable for breach of contract, including breach of a TPA, at the motion to dismiss stage. See Conte, 52 F. Supp. 3d at 268-69; Young, 717 F.3d at 231-36.

Furthermore, Massachusetts law presumes that contract rights can be assigned to another entity unless the contract or a statute prohibits assignment. See Am. Employers' Ins. Co. v. City of Medford, 644 N.E.2d 241, 243 (Mass. App. 1995).  Because there is no clause or statute prohibiting assignment, plaintiffs have stated a plausible theory that the contractual rights and

obligations of the Agreement could have been assigned to RCS and Rushmore as Quantum's successors.  As such, judgment on the pleadings with respect to the breach of contract claim is unwarranted.

### 2.    Promissory Estoppel Claim (Count II) Against Rushmore & RCS

Count II purports to raise a claim premised on a theory of promissory estoppel.  To state such a claim, plaintiffs must allege that 1) defendants promised to negotiate a loan modification if plaintiffs took certain steps, 2) despite plaintiffs' compliance, defendants did not modify the loan and 3) injustice can only be avoided by enforcing the promise. See Dill v. Am. Home Mort. Servicing, Inc., 935 F. Supp. 2d 299, 304-05 (D. Mass. 2013). See also Carroll v. Xerox Corp., 294 F.3d 231, 242 (1st Cir. 2002).

Promissory estoppel is typically asserted as an alternative theory to breach of contract in instances where the contract is not supported by consideration. See Nickerson-Reti v. Bank of Am., N.A., No. CIV. 13-12316-FDS, 2014 WL 2945198, at *10 (D. Mass. June 26, 2014).  Because the pleadings plausibly show the existence of a valid contract, the Court does not need to consider this theory at the present juncture. Id.  Judgment on the pleadings is unwarranted.

### 3.  FDCPA Violations (Count IV) Against RCS

Plaintiffs further allege that RCS violated the Fair Debt Collection Practices Act.  To state a claim for a violation of the FDCPA, a plaintiff must show

> 1) that [plaintiff] was the object of collection activity arising from consumer debt, 2) defendants are debt collectors as defined by the FDCPA, and 3) defendants engaged in an act or omission prohibited by the FDCPA.

O'Connor v. Nantucket Bank, 992 F. Supp. 2d 24, 30 (D. Mass. 2014)(internal quotation marks omitted).

### a.  Debt Collector

Plaintiffs must first show that RCS is a "debt collector" as defined under the FDCPA. See O'Connor, 992 F. Supp. 2d at 30. Mortgage servicing companies such as RCS are not considered debt collectors under the FDCPA unless the servicer obtained the servicing rights when the debt was in default. See In re JPMorgan Chase Mortgage Modification Litig., 880 F. Supp. 2d 220, 243 (D. Mass. 2012).

Plaintiffs have sufficiently alleged facts showing that RCS is a "debt collector."  At the time RCS assumed loan servicing in August, 2012, plaintiffs' mortgage was the subject of a trial plan or forbearance agreement, the completion of which was to have resulted in the partial reinstatement of the Note and mortgage.  Plaintiffs do not state, however, that the note and mortgage were fully reinstated after complying with the

Agreement.  While plaintiffs did not explicitly allege that the loan was in default at the time servicing was transferred, the Court finds the pleadings sufficient to support a claim that the mortgage was in default at the time of transfer to RCS. Accordingly, plaintiffs have adequately alleged that RCS is a "debt collector" under the FDCPA.

### b.  Collection Activity

The second element of an FDCPA claim requires plaintiffs to allege that they were the subject of a consumer debt collection. See O'Connor, 992 F. Supp. 2d at 30.  For the purposes of the FDCPA, the term "debt" encompasses residential mortgages. See McCusker v. Ocwen Loan Servs., LLC, No. CV 14-13663-MGM, 2015 WL 4529986, at *2 (D. Mass. July 27, 2015).

Plaintiffs have properly pled that they granted a mortgage that was serviced by RCS and that RCS attempted to collect the associated debt because it believed the loan was in default. Specifically, they cite a letter dated December 3, 2012 in which defendant RCS indicated that the loan was in default and that it intended to accelerate the debt owed.  Consequently, plaintiffs have alleged that they were the subject of a consumer debt collection.

### c.  Prohibited Conduct

The last requirement of an FDCPA claim is that RCS engaged in an act or omission prohibited by the FDCPA. See O'Connor, 992

F. Supp. 2d at 30.  Plaintiffs allege that RCS refused to recognize that they made over $36,000 in payments to Quantum under the Agreement.  RCS sent a letter on December 17, 2012 to plaintiffs showing their payment history with Quantum and RCS but without crediting them for the amounts paid.  In subsequent documents dated May 22, 2013, March 24, April 1 and April 17, 2014, RCS purportedly failed to acknowledge the payments made under the forbearance agreement despite its receipt of the monies.

Although plaintiffs have not identified a specific statutory prohibition under the FDCPA, they have stated a colorable claim that RCS falsely represented the amount due under the loan in violation of 15 U.S.C. § 1692e(2)(A). See Edwards v. Zigler, No. C 09-03248 MEJ, 2009 WL 3429661, at *3 (N.D. Cal. Oct. 22, 2009)(reviewing an FDCPA claim on the basis of generally alleged conduct even though plaintiffs failed to state under which section the FDCPA claim is brought). Accordingly, the Court will deny RCS's motion for judgment on the pleadings with respect to Count IV.

### 4.   Chapter 93A Violations (Count V) Against RCS

Finally, plaintiffs claim that RCS engaged in unfair and deceptive trade practices in violation of Chapter 93A.  To prevail on a Chapter 93A claim, plaintiffs must show that 1) defendant committed an unfair or deceptive trade practice while

engaged in trade or business, 2) plaintiffs suffered an injury
and 3) a causal connection between defendant's alleged act and
plaintiffs' injury. See Morris v. BAC Home Loans Servicing,
L.P., 775 F. Supp. 2d 255, 259 (D. Mass. 2011).

To allege that a business practice is deceptive or unfair
under the first element, plaintiffs must show that RCS's trade
practice or conduct

> [1] falls within at least the penumbra of some common-
> law, statutory, or other established concept of
> unfairness; [2] is immoral, unethical, oppressive, or
> unscrupulous; and [3] causes substantial injury to
> consumers.

See Young, 2016 WL 3607033 at *5 (internal quotation marks
omitted).

RCS moves for judgment on the pleadings with respect to
plaintiffs' allegations that it violated Chapter 93A by 1)
contacting plaintiffs after receiving a cease and desist letter,
2) enforcing a "structurally unfair" loan, 3) misrepresenting
material information about the loan, including the delinquency
status and amount owed, 4) knowingly or recklessly misapplying
plaintiffs' loan payments, 5) attempting "to force plaintiffs to
provide additional insurance where adequate insurance existed"
and 6) failing to make good faith considerations of foreclosure
alternatives, including failing to modify the loan, process
modification applications or explain modification denials.

### a.   Contact After Receiving a Cease and Desist Letter

The Court will grant judgment for RCS on the Chapter 93A claim alleging communication after receiving a cease and desist letter because the complaint does not allege that plaintiffs sent RCS a cease and desist letter.

### b.   Enforcing a "Structurally Unfair" Loan

The Court will also grant judgment for RCS on plaintiffs' Chapter 93A claim to the extent that it asserts that RCS attempted to enforce a "structurally unfair" loan because plaintiffs have stipulated that they will not pursue that allegation against RCS.

### c.   Material Misrepresentation of Loan

The portion of the Chapter 93A claim asserting material misrepresentation of the loan survives the motion for a judgment on the pleadings because plaintiffs have adequately pled their FDCPA claim. See French v. Corp. Receivables, Inc., 489 F.3d 402, n. 1 401 (1st Cir. 2007)(holding that an FDCPA violation constitutes a per se violation of Chapter 93A).

### d.   Misapplication of Loan Payments

The Chapter 93A claim with respect to purported misapplication of mortgage payments also survives the motion for a judgment on the pleadings.  Knowing misapplication or reckless application of a loan payment is a violation of 209 CMR § 18.21 and, consequently, falls within an "established concept of

unfairness." See Young, 2016 WL 3607033 at *5.  The various letters exchanged between plaintiffs and RCS in late 2012 and early 2013 support a reasonable inference that RCS acknowledged receipt of their payments made under the forbearance agreement but failed to credit those amounts to the debt. See, e.g, In re Hart, 246 B.R. 709, 735 (Bankr. D. Mass. 2000)(finding misapplication of loan payments coupled with other prohibited conduct constitutes a Chapter 93A violation).  As such, judgment on the pleadings for that claim is unwarranted.

### e.   Additional Insurance

Plaintiffs also allege that RCS "force-placed" duplicative hazard insurance even though they maintained adequate coverage. When appropriate insurance is in place, force placing insurance is a violation of 209 CMR § 18.21(3) which thus qualifies it as an unfair and deceptive business practice. See generally Brown, 67 F. Supp. 3d at 514.  Plaintiffs' April, 2014 request that RCS remove certain insurance charges permits this Court reasonably to infer that RCS purchased and charged plaintiffs for duplicative insurance.  The Court is satisfied that plaintiffs have sufficiently alleged that RCS "force-placed" insurance for them and that they were harmed by being billed for that insurance.  Because further investigation is required to resolve that claim, the motion for judgment on the pleadings with respect to duplicative insurance will be denied.

### f. Failure to Modify Loan

Plaintiffs also claim that RCS violated Chapter 93A by failing to consider in good faith foreclosure alternatives such as failing 1) to grant a modification that was represented as approved, 2) to process HAMP modification applications or 3) to explain its denials of the requested modifications.

The Court will grant judgment for RCS on the Chapter 93A claim with respect to the failure to explain a modification denial because the complaint does not allege that RCS denied any modification request.

Plaintiffs have stated a plausible Chapter 93A claim with respect to the allegation that RCS failed to grant a modification that was represented as approved because RCS led them to believe they would be entitled to a loan modification. See Bosque, 762 F. Supp. 2d at 353-54 (D. Mass. 2011).  The documents in the Agreement package suggest that plaintiffs' loan would be modified upon completion of the six-month trial plan agreement.  Because plaintiffs sufficiently allege that the Agreement bound RCS, the Court finds that they have stated a Chapter 93A violation for unfair or deceptive practices regarding the denial of the anticipated modification.  The motion for a judgment on the pleadings will be denied in that respect.

With respect to the allegation that RCS failed to process plaintiffs' modification applications, the Court is also persuaded that plaintiffs have alleged enough facts to sustain a Chapter 93A claim.  Plaintiffs state that they provided RCS with at least four modification applications between late 2012 and the end of 2014.  They also allege that RCS requested numerous documents that they had already provided during that same period. See Charest v. Fed. Nat. Mort. Ass'n, 9 F. Supp. 3d 114, 122, 125-26 (D. Mass 2014)(holding that evidence of delays in processing a modification, unresponsiveness and duplicative document requests by a mortgage servicer were sufficient to state a claim under Chapter 93A).  That conduct, if proved, "would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." Levings v. Forbes & Wallace, Inc., 396 N.E.2d 149, 153 (Mass. App. Ct. 1979).  As such, judgment on the pleadings is unwarranted with respect to that Chapter 93A claim.

### g. Findings by the Court

Accordingly, judgment on the pleadings is warranted on plaintiffs' Chapter 93A claim against RCS for allegedly 1) contacting them after receiving a cease and desist letter, 2) enforcing a "structurally unfair" loan and 3) failing to explain loan modification denials.

Judgment on the pleadings is unwarranted, however, on the Chapter 93A claim against RCS for allegedly 1) misrepresenting material information about the loan, 2) knowingly or recklessly misapplying loan payments, 3) attempting to force-purchase insurance, 4) failing to grant a loan modification and 5) inadequately processing their loan modification applications.

### ORDER

For the foregoing reasons,

1)    the motion to dismiss of defendant Rushmore (Docket No. 31) is **DENIED**, and

2)    the motion for judgment on the pleadings by defendant RCS (Docket No. 37) is, with respect to RCS's conduct under Mass Gen. Laws ch. 93A for allegedly a) contacting plaintiffs after receiving a cease and desist letter, b) enforcing a "structurally unfair" loan and c) failing to explain the denial of modifications, **ALLOWED**, but is otherwise **DENIED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated: August 4, 2016