```
                    United States District Court
                      District of Massachusetts
_____
                                   )
CONRAD S. TRAUT and                )
CELINA M. TRAUT,                   )
                                   )
        Plaintiffs                 )
                                   )    Civil Action No.
        v.                         )    15-13401-NMG
                                   )
QUANTUM SERVICING CORPORATION,     )
RUSHMORE LOAN MANAGEMENT           )
SERVICES LLC, ELIZON MASTER        )
PARTICIPATION TRUST I and          )
US BANK TRUST N.A.,                )
                                   )
        Defendants.                )
_____)
```

## MEMORANDUM & ORDER

**Gorton, J.**

In September, 2015, Conrad and Celina Traut (collectively, "plaintiffs" or "the Trauts") brought this action against Quantum Servicing Corporation ("Quantum"), Residential Credit Solutions, Inc. ("RCS"), Rushmore Loan Management Services LLC ("Rushmore") and Elizon Master Participation Trust I, U.S. Bank Trust National Association as Owner/Trustee ("Elizon" or "the Trust") (collectively, "defendants") seeking injunctive relief and civil damages for defendants' alleged conduct with respect to plaintiffs' residential mortgage. Pending before the Court are Quantum's motion for summary judgment (Docket No. 119) and Elizon and Rushmore's motion for summary judgment (Docket No.

- 1 -

124). For the reasons that follow, Quantum's motion will be denied and Elizon and Rushmore's motion will be allowed.

## I. Background and Procedural History

Plaintiffs own a residence in Sharon, Massachusetts. In 2007, plaintiffs executed a note and 30-year mortgage with American Home Mortgage ("AHM") to secure a loan in the amount of $415,200. Shortly thereafter, AHM transferred the note and mortgage to Societe Generale S.A. which retained Quantum to service the loan. The terms of the mortgage included a low introductory interest rate, an initial monthly payment of less than full interest and a subsequent rate increase set only to repay accrued interest.

In July, 2010, plaintiffs made a late payment due to financial hardship. Quantum, as the loan servicer, marked the loan delinquent and threatened foreclosure. Plaintiffs state that they attempted to make subsequent payments but that such efforts were rejected by Quantum. They attempted to obtain a modification of their loan throughout 2011. In December, 2011, those efforts resulted in receipt of a forbearance agreement ("the forbearance agreement") and letter indicating that plaintiffs' loan would be modified "upon completion of the 6 month trial plan agreement". The forbearance agreement called for an additional down payment and six monthly installment

payments.  Plaintiffs executed the document to prevent an imminent foreclosure sale.

In August, 2012, RCS succeeded Quantum as the loan servicer.  Quantum declined a permanent modification of the loan prior to transferring the servicing to RCS.  The forbearance plan was extended for two months and plaintiffs made two final payments in July, 2012 and August, 2012.  RCS did not permanently modify the loan and rejected three applications for a loan modification submitted by the Trauts.

In December, 2014, the Trauts received a letter informing them that, effective January 1, 2015, Rushmore would assume loan servicing.  Rushmore notified plaintiffs in February, 2015 that the loan was in foreclosure.  Throughout the spring of 2015, Rushmore was in contact with plaintiffs.  In May, 2015, plaintiffs' counsel sent Rushmore a cease and desist letter advising Rushmore that all further communications should be made through plaintiffs' counsel.  They also sent a demand letter to Quantum, RCS and Rushmore in May, 2015 pursuant to M.G.L. c. 93A.

In September, 2015, plaintiffs initiated this action by filing a complaint against defendants alleging 1) breach of contract by Quantum, RCS, Rushmore and Elizon, 2) promissory estoppel against Quantum, RCS, Rushmore and Elizon, 3) negligent misrepresentation by Quantum, 4) violations of the Fair Debt Collection Practices Act ("FDCPA") by Quantum, RCS and Rushmore

and 5) violations of M.G.L. c. 93A ("Chapter 93A") by Quantum, RCS, Rushmore and Elizon.  In January, 2016, plaintiffs and Quantum filed a stipulation of partial dismissal as to Counts III and IV and as to Count V, with respect to claims regarding the alleged improper origination of the loan.  That same day, plaintiffs and Rushmore filed a stipulation of partial dismissal of Count V insofar as it alleged improper origination and enforcement of the loan.

In November, 2015, the parties filed a stipulation with respect to the mortgage payments that would become due during the pendency of the litigation.  The agreement provided that plaintiffs would continue making monthly payments, to be held in escrow, and defendants agreed to forbear all foreclosure activity.  In September, 2017, Elizon filed a motion to amend its answer and assert a counterclaim, stating that plaintiffs had violated the terms of the stipulation.  That motion was allowed and Elizon filed its counterclaim in October, 2017, alleging breach of contract by and the unjust enrichment of Conrad Traut.

In August, 2017, plaintiffs and RCS filed a stipulation of dismissal as to defendant RCS only.  In October, 2017, on the eve of trial, the parties jointly moved to continue the pretrial conference and the scheduled trial date.  This Court allowed that motion and, in January, 2018, Quantum, Rushmore and Elizon

moved for summary judgment on all claims.  The motions for summary judgment are the subject of this memorandum.

**II.  Motions for Summary Judgment**

    **A.  Legal Standard**

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991).  The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

If the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The Court must view the entire record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993).

Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.

**B.   Quantum's Motion for Summary Judgment**

    **1.   Breach of Contract (Count I)**

Quantum avers that plaintiffs' breach of contract claim fails as a matter of law because the forbearance agreement contains an integration clause and represents the only agreement between the Trauts and Quantum.  Quantum contends that because it is undisputed that two of the six monthly installment payments were made late, the Trauts were in breach of the contract.  Plaintiffs rejoin that the forbearance agreement contained a cover letter that was part of the agreement which explicitly promised a modification and some forgiveness of the arrearage if the payments were made.  Plaintiffs submit that they were not late on at least one of the payments in question.

Under the Massachusetts parol evidence rule, extrinsic evidence cannot be admitted to alter the terms of an integrated and complete written contract where there is no ambiguity. Cambridgeport Sav. Bank v. Boersner, 413 Mass. 432, 440 (1992). The parol evidence rule does not, however, bar introduction of extrinsic evidence that "elucidates the meaning of an ambiguous

contract". Wincheester Gables, Inc. v. Host Marriott Corp., 70 Mass. App. Ct. 585, 591 (2007).

The purported cover letter to the forbearance agreement (which Quantum failed to mention in its memorandum) explicitly provides that, if the trial plan payments are made, the loan "will be modified" and modification documents "will be generated". While Quantum avers that the cover letter must be excluded as extrinsic evidence because the letter contradicts the terms of the forbearance agreement, plaintiffs have proffered evidence that the cover letter accompanied the agreement, creating a genuine issue of material fact as to whether it formed part of the agreement. In addition to the cover letter, plaintiffs proffer an email suggesting that Quantum approved a proposal to forgive a portion of the accrued interest due to the negative amortization of the original loan.

Quantum contends that the Trauts breached the forbearance agreement by making two late payments, in February and May, 2012. The terms of the forbearance agreement contained a "no grace period" clause, requiring that each payment be made on or before the 20th of each month and providing that any late payment would allow the servicer to cancel the agreement without notice to the mortgagor. Quantum relies on Young v. Wells Fargo Bank, N.A., 109 F. Supp. 3d 387, 392 (D. Mass. 2015) in its contention that the late payments constituted a material breach.

In Young, the Court found that a payment made one day late under a trial payment plan constituted a material breach

> insofar as HAMP [Home Affordable Modification Program] program requirements mandated strict compliance with payment receipt deadlines.

Id. The court made clear that the HAMP requirements were a "decisive consideration". Id. Because the trial payment plan agreement between the parties was a prerequisite to eligibility for HAMP modification and the HAMP modification requirements were not met, the late payment constituted a material breach. Id. at 392-93.

Quantum and the Trauts did not execute the forbearance agreement pursuant to the HAMP program and, therefore, the consideration the Young court found "decisive" is not present here. Furthermore, the Trauts raise a genuine issue of material fact as to whether at least one of the payments was timely, pointing to a discrepancy in the records produced by Quantum and the bank records reflecting the Trauts' account. Accordingly, the Trauts have raised a genuine issue of material fact as to whether the contract was breached and Quantum is not entitled to summary judgment as a matter of law on Count I.

## 2. Promissory Estoppel (Count II)

Quantum contends that the Trauts' promissory estoppel claim, as an alternative to the breach of contract claim, must fail for the same reason as the breach of contract claim: the

Trauts could not reasonably rely on any assurances made outside the four corners of the forbearance agreement.

To prevail on a claim of promissory estoppel under Massachusetts law, a plaintiff must demonstrate that it "reasonably relied on the alleged promise to his detriment". Hall v. Horizon House Microwave, 24 Mass. App. Ct. 84, 94 (1987). Where a written contract or agreement conflicts with a prior oral representation, reliance on the oral representation is generally held to be unreasonable. Coll v. PB Diagnostic Sys., Inc., 50 F.3d 1115, 1124 (1st Cir. 1995) (internal citation omitted).

Quantum avers that the alleged reliance of the Trauts on the cover letter to the forbearance agreement was unreasonable because the forbearance agreement contradicted the terms of the letter. The Trauts do not purport to rely on prior oral representations made during a negotiation process, however, instead choosing to rely on a cover letter that they contend was sent with the written agreement. For the reasons set forth above, Quantum is not entitled to summary judgment on Count II.

### 3. Chapter 93A Claim (Count V)

Quantum asserts that it is entitled to summary judgment on the Trauts' M.G.L. c. 93A claims because the Trauts' demand letter was insufficient and the plaintiffs admitted in a

deposition that the dispute surrounding insurance payments on the residence had been resolved.

Prior to bringing suit under Chapter 93A under Massachusetts law, a plaintiff must send the defendant

> a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered.

M.G.L. c. 93A, § 9(3). "The statutory notice requirement is not merely a procedural nicety, but rather, a prerequisite to suit". Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 19 (1st Cir. 2004) (internal citation omitted). The purpose of the demand letter is to put the defendant on notice and to encourage negotiation and settlement. Spring v. Geriatric Auth. of Holyoke, 394 Mass. 274, 288 (1985).

Quanutm's contention that the demand letter was insufficient as a matter of law to maintain a claim under Chapter 93A is without merit. The Trauts identify the amount that they claim was not properly credited under the forbearance agreement ($36,000) and Quantum, as the prior loan servicer, had information about the value of the home that would put it on notice with respect to the damages the Trauts could reasonably expect to recover. See e.g., Brandt v. Olympic Constr. Inc., 16 Mass. App. 913, 915 (1983) (holding that a demand letter was sufficient where the compensation recoverable as a result of the injury complained of was apparent from the facts alleged). The

demand letter here was sufficient to achieve the dual purposes of the notice requirement, encouraging negotiation through notification to prospective defendants and limiting the amount of damages in a meaningful way. See Spring v. Geriatric Auth. of Holyoke, 394 Mass. 274, 288 (1985).

Quantum notes that plaintiffs have not met their burden to show that Quantum violated Chapter 93A by causing the Trauts emotional distress. See e.g., Young, 109 F. Supp. 3d at 396 (citing Rule v. Fort Dodge Animal Health, Inc., 607 F.3d 250, 255 (1st Cir. 2010)) (noting that under Massachusetts law, a plaintiff must prove all of the elements of intentional infliction of emotional distress in order to prevail on a Chapter 93A claim for emotional damages). Plaintiffs have not produced any affirmative evidence of an intentional infliction of emotional distress nor do they contest Quantum's denial thereof. To defeat a motion for summary judgment, the non-moving party must "establish the existence of a factual controversy that is both genuine and material". Lohnes v. Level 3 Communs., Inc., 272 F.3d 49, 52 (1st Cir. 2001). To the extent that plaintiffs are seeking damages for emotional distress related to the foreclosure of their home, they have not met that burden and Quantum's motion will be allowed but plaintiffs may pursue their Chapter 93A claim for economic injury.

#### 4. Negligent Misrepresentation and Fair Debt Collection Practices Act (Counts III or IV)

In its opposition memorandum, plaintiffs state that Quantum has not moved for summary judgment on Counts III or IV and that, therefore, Quantum is not entitled to summary judgment on those claims. The Court notes that the parties stipulated in January, 2016 to dismiss Counts III and IV as to Quantum and that, therefore, those claims are no longer pending.

### C. Rushmore and the Trust's Motion for Summary Judgment

#### 1. Contract Claims (Counts I and II)

Rushmore and the Trust move for summary judgment on Counts I and II on the grounds that neither defendant was a party to the forbearance agreement and successors and assigns were not bound by the agreement. In their opposition memorandum, the Trauts stipulate that Rushmore and the Trust are not successors to the forbearance agreement and plaintiffs do not oppose summary judgment on Counts I and II. Accordingly, the motion for summary judgment is allowed as to Counts I and II.

#### 2. Fair Debt Collection Practices Act (Count IV)

Rushmore contends that the Trauts cannot make out a claim under the FDCPA because they have not produced evidence that Rushmore falsely stated that the loan was delinquent or that Rushmore misstated the amount due. Plaintiffs respond by stating that Rushmore attempted to collect on an incorrect

outstanding balance because the previous servicer, Quantum, failed to honor the agreement to forgive accrued arrearages and enter into a loan modification.

The FDCPA prohibits a debt collector from "using any false, deceptive, or misleading representation of means" in connection with the collection of an outstanding debt. Schaefer v. ARM Receivable Mgmt., No. 09-11666, 2011 WL 2847768, at *3 (D. Mass. July 19, 2011) (citing 15 U.S.C. § 1692e). To recover under the FDCPA, a plaintiff must show that he has

> (1) been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA and (3) the defendant has engaged in an act or omission prohibited by the FDCPA.

Nath v. Select Portfolio Serv., Inc., No. 15-cv-8183, 2017 WL 782914, at *11 (S.D.N.Y. Feb. 28, 2017). Rushmore has produced evidence that it contacted the Trauts regarding the total amount of debt reflected in its records that it had obtained from the prior servicer. Rushmore's attempt to collect the Trauts' debt was permissible under the FDCPA. The Trauts' claim that Rushmore violated the FDCPA relies on the alleged conduct of a separate defendant, Quantum, and its alleged failure to honor the terms of the forbearance agreement. The Trauts have not produced affirmative evidence sufficient to suggest that Rushmore engaged in deceptive or misleading debt collection

practices and, accordingly, Rushmore is entitled to summary judgment on Count IV.

### 3. Chapter 93A

Rushmore and the Trust contend that the Trauts have not made out a Chapter 93A claim because (1) they were not successors to the purported agreement between Quantum and the Trauts and (2) they did not engage in unfair or deceptive practices in their attempt to collect the outstanding debt. As discussed above, plaintiffs do not dispute that Rushmore and the Trust are not liable under the contract claims. As discussed in reference to plaintiffs' FDCPA claim, the Trauts have not produced evidence suggesting that Rushmore or the Trust engaged in deceptive or unfair trade practices but instead attempt to attribute the alleged misconduct of Quantum to the successor servicers. Accordingly, the motion for summary judgment is allowed as to Count V.

## ORDER

For the foregoing reasons, Quantum's motion for summary judgment (Docket No. 119) is **DENIED** and Rushmore and the Trust's motion for summary judgment (Docket No. 124) is **ALLOWED.**
**So ordered.**

/s/ Nathaniel M. Gorton\_\_\_\_\_
Nathaniel M. Gorton
United States District Judge

Dated March 7, 2018